UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS

| | |
|---|---|
| TYRONE COAT<br><br>        Plaintiff,<br><br>v.<br><br>EQUIFAX INFORMATION SERVICES, LLC,<br><br>        Defendant. | Case No.: 1:24-cv-11720<br><br>**COMPLAINT AND DEMAND FOR JURY TRIAL**<br><br>1. **FCRA, 15 USC § 1681** *et seq.* |

Plaintiff Tyrone Coat ("Plaintiff"), through counsel, alleges violations of the Fair Credit Reporting Act ("FCRA"), 15 U.S.C. § 1681 *et seq.* against Defendant Equifax Information Services, LLC ("Equifax" or "Defendant").

## I.    INTRODUCTION

1. Plaintiff's Complaint arises from violations of the Fair Credit Reporting Act ("FCRA"), 15 U.S.C. § 1681 *et seq.* by the Defendant. Plaintiff contends the Defendant failed to follow reasonable procedures to assure maximum possible accuracy in the preparation of Plaintiff's consumer reports, and consequently reported inaccurate information about Plaintiff. "Consumer reports" under 15 U.S.C. § 1681a(d) include both credit file disclosures obtained directly by Plaintiff from the consumer reporting agencies and consumer reports obtained by third parties as a factor in establishing Plaintiff's eligibility for credit.

## II.    JURISDICTION AND VENUE

2. This Court has jurisdiction of this action pursuant to 28 U.S.C. § 1331 because Plaintiff alleges violations of the FCRA, a federal law. *See* 15 U.S.C. § 1681p (FCRA) (permitting actions to enforce liability in an appropriate United States District Court).

1

3.      Venue in the Northern District of Illinois is proper pursuant to 28 U.S.C. § 1391 because Defendant regularly transacts business within this District, is otherwise subject to personal jurisdiction in this District, and a substantial part of the events giving rise to Plaintiff's claims occurred in this District.

### III.    PARTIES

4.      Plaintiff incorporates herein by reference all the above paragraphs of this Complaint as though fully set forth at length herein.

5.      Plaintiff is a natural person who resides in the city of Blue Island, Cook County, Illinois .

6.      Plaintiff is a "consumer" as defined by the FCRA, 15 U.S.C. §1681a(c).

7.      Defendant Equifax is a "consumer reporting agency," as defined in 15 U.S.C. § 1681a(f). Upon information and belief, Equifax is regularly engaged in the business of assembling, evaluating, and disbursing information concerning consumers in the form of "consumer reports," as defined in 15 U.S.C. § 1681a(d)), to third parties. Equifax's principal place of business is located at 1550 Peachtree Street NW, Atlanta, GA 30309.

8.      During all times pertinent to this Complaint, Defendant was authorized to conduct business in the State of Illinois and conducted business in the State of Illinois on a routine and systematic basis.

9.      Defendant regularly engages in the business of assembling, evaluating, and disbursing information concerning consumers for the purpose of furnishing "consumer reports," as defined in 15 U.S.C. § 1681a(d), to third parties. Defendant regularly furnishes consumer reports to third parties for monetary compensation, fees, and other dues, using means and facilities of

interstate commerce, and are therefore "consumer reporting agencies" ("CRAs") as defined by 15 U.S.C. § 1681a(f) of the FCRA.

10. During all times pertinent to this Complaint, Defendant acted through authorized agents, employees, officers, members, directors, heirs, successors, assigns, principals, trustees, sureties, subrogees, representatives, and/or insurers.

11. Any violations by Defendant were not in good faith, were knowing, negligent, willful, and/or intentional, and Defendant did not maintain procedures reasonably adapted to avoid any such violation.

## IV. FACTUAL BACKGROUND

12. Plaintiff incorporates herein by reference all the above paragraphs of this Complaint as though fully set forth at length herein.

13. The United States Congress has found that the banking system is dependent upon fair and accurate credit reporting. Inaccurate consumer reports directly impair the efficiency of the banking system, and unfair credit reporting methods undermine the public confidence, which is essential to the continual functioning of the banking system.

14. Congress enacted the FCRA to ensure fair and accurate reporting, promote efficiency in the banking system, and protect consumer privacy.

15. The FCRA is intended to ensure CRAs exercise their grave responsibilities with fairness, impartiality, and a respect for the consumer's right to privacy because CRAs have assumed such a vital role in assembling and evaluating consumer credit and other consumer information.

16. Defendant, one of the three major consumer reporting agencies (at times referred to collectively as "the CRAs," and individually as a "CRA") in the United States, regularly

publishes and distributes credit information about Plaintiff and other consumers through the sale of consumer reports (i.e., credit reports).

17. Defendant's consumer reports generally contain the following information: (i) <u>Header/Identifying Information:</u> this section generally includes the consumer's name, current and prior addresses, date of birth, and phone numbers; (ii) <u>Tradeline Information</u>: this section pertains to consumer credit history, and includes the type of credit account, credit limit or loan amount, account balance, payment history, and status; (iii) <u>Public Record Information</u>: this section typically includes public record information, such as bankruptcy filings; and (iv) <u>Credit Inquiries</u>: this section lists every entity that has accessed the consumer's file through a "hard inquiry" (i.e., consumer-initiated activities, such as applications for credit cards, to rent an apartment, to open a deposit account, or for other services) or "soft inquiry" (i.e., user-initiated inquiries like prescreening).

18. Defendant obtains consumer information from various sources. Some consumer information is sent directly to Defendant, and other information must be independently gathered by Defendant, or acquired from third party providers, vendors or repositories, such as computerized reporting services like PACER or Lexis-Nexis.

19. Defendant also obtains information from other CRAs (who commonly share information).

20. Defendant regularly seeks out and procures consumer bankruptcy filing and discharge information on a daily basis, with the intention of including it in the consumer reports Defendant sells to third parties for a profit.

21. The diligence Defendant exercises in uncovering consumer bankruptcies is not replicated in Defendant's subsequent reporting and matching of such bankruptcies to consumer credit files.

22. Defendant's unreasonable policies, procedures, and/or algorithms consistently fail to properly match personal identifying information included in a bankruptcy with a consumer's credit file as required by § 1681(e)(b).

23. Consequently, Defendant often reports one consumer's bankruptcy information on another consumer's credit file, a common error in the credit reporting industry known as a mixed file.

24. The Federal Trade Commission ("FTC") defines a mixed file as a file that "refers to a Consumer Report in which some or all of the information pertains to Persons other than the Person who is the subject of that Consumer Report." *F.T.C. v. TRW, Inc.* 784 F. Supp. 361, 362 (N.D. Tex. 1991).

25. The main cause of mixed files is the failure of a credit reporting agency ("CRA") to use full identifying information to match records to the personal identifying information of consumers who are the subject of its reports.

26. Mixed files are not a new phenomenon. Equifax has been on notice of the existence of mixed files for over thirty (30) years. In the early 1990s, the FTC entered into individual Consent Decrees with each of the major CRAs, including Equifax, regarding their significant failures and deficiencies with respect to mixed files.

27. Despite Equifax's long-standing and specific knowledge of a mixed file problem, Equifax maintains a standard practice of using only partial matching and not full identifying information in preparing consumer reports. For instance, Equifax does not require a match to full

5

identifying information (such as full last name and first name; middle initial; full street address; zip code, year of birth; any generational designation; and social security number) before preparing a report that it attributes to a particular consumer and sells about that consumer.

28. Moreover, Equifax employs policies and procedures that do not include the use of a reasonable number of identifiers, or even a precise first and last name, and frequently allows the information belonging to one consumer to appear in the consumer file of another.

29. Equifax employs these loose matching procedures to maximize the number of reports which contain information, accurate or not. Equifax intentionally employs procedures that maximize the likelihood of a match between any inquiry and some data in its database about one or more consumers, purposefully prioritizing quantity of matches over accuracy of matches.

30. Equifax's reporting of inaccurate public information is not accidental, nor just a result of simple negligence, but a result of deliberately designed policies and procedures.

31. The vast majority of institutions that offer financial services (e.g., banks, creditors, lenders) rely upon consumer reports from CRAs (like Defendant) to make lending decisions.

32. The information Defendant includes in a consumer report contributes to a consumer's overall creditworthiness and determines their FICO Scores.

33. FICO Scores are calculated using information contained in Defendant's consumer reports.

34. FICO and other third-party algorithms use variables or "attributes" derived from a consumer's consumer report to calculate a "credit score," which is a direct reflection of a consumer's creditworthiness.

35. FICO Scores factor the following consumer report information: Payment history (35%); Amount of debt (30%); Length of credit history (15%); New credit (10%); and Credit mix (10%).

    a. "Payment history" refers to whether a consumer has paid her or her bills in the past, and whether these payments have been timely, late, or missed. In factoring the severity of delinquent payments, a FICO Score considers how late the payment continues to be, how much is owed, how recently the delinquency occurred, and how many delinquent accounts exist. The more severe, recent, and frequent late payments are, the lower a consumer's FICO Score will be.

    b. The "amount of debt" a consumer owes has a major impact on their credit score. When a CRA reports a debt as outstanding when it is in fact discharged, the CRA is indicating that a consumer's "amount of debt" is higher than it actually is, which will undoubtedly impact a consumer's credit score.

36. A reporting of a bankruptcy on a consumer's credit file has a significant negative impact on the consumer's credit score and credit worthiness.

*Allegations Specific to the Credit Reporting of Plaintiff*

37. Plaintiff's son, Tyrone Coat, filed a Chapter 13 Bankruptcy in or about November 2021 in the United States Bankruptcy Court for the Northern District of Illinois (Case No. 21-12920).

38. Plaintiff's son's bankruptcy was dismissed in March 2022.

39. Plaintiff was discharged in his own bankruptcy in 2023 but was never a part of his son's bankruptcy.

40. Sometime after Plaintiff's son's bankruptcy dismissal, Plaintiff attempted to obtain credit and applied for apartment rentals, but his applications were denied.

41. Plaintiff's denial's identified a chapter 13 bankruptcy as the reason for the denials.

42. Plaintiff was confused and distressed as he had never filed for a Chapter 13 bankruptcy.

43. Prompted by the mention of a chapter 13 bankruptcy in his denial letters, Plaintiff obtained a copy of his Equifax consumer credit report.

44. Upon review, Plaintiff discovered that Equifax was inaccurately reporting a Chapter 13 bankruptcy filed in November 2021, the same month and year as his son's bankruptcy, under the Public Records section of his consumer report (the "Bankruptcy").

45. Plaintiff has never filed for a Chapter 13 bankruptcy.

46. Notably, the other CRAs, Experian and Trans Union accurately reported Plaintiff's credit file without any Chapter 13 bankruptcy information in the Public Records sections of his reports.

47. Consequently, Defendant's inaccurate reporting of the bankruptcy caused Plaintiff's Equifax score to drop significantly.

48. Upon information and belief, Defendant received notice of Plaintiff's son's bankruptcy dismissal through its independent collection of consumer information through vendors such as Lexis-Nexis, as well as from furnishers that provided data regarding the individual tradelines featured on Plaintiff's consumer reports.

49. Upon information and belief, the bankruptcy notice Defendant received identified the consumer who had filed for bankruptcy included his son's social security number and not Plaintiff's social security number.

50. Consequently, Equifax knew or should have known that not all personal identifying information in the bankruptcy matched Plaintiff's personal identifying information.

51. However, pursuant to Defendant's unreasonable policies and procedures, Defendant inaccurately reported the bankruptcy information on Plaintiff's consumer report.

52. Defendant's reporting of the Chapter 13 Bankruptcy is patently inaccurate.

53. If not patently in accurate, Defendant's reporting of the Bankruptcy is materially misleading.

54. Defendant was also inaccurately reporting Plaintiff's Capital One account (account number 5491129xxx and opened in January 2019) with a balance of $220 while it was included in Plaintiff's Chapter 7 bankruptcy.

55. Defendant's Capital One Account should have been reporting with a $0 balance and a status of included in bankruptcy.

*Plaintiff's Damages*

56. The inaccurately reporting of a Chapter 13 bankruptcy in Plaintiff's consumer report when he had never filed for Chapter 13 bankruptcy significantly decreased his credit scores and creditworthiness.

57. After Equifax started inaccurately reporting the Chapter 13 bankruptcy on Plaintiff's consumer report, Plaintiff applied for credit with Chevrolet, FirstInvst, CPS, Global Lending, HAC Auto, Capital One, American CR, and Western Fun and was denied or approved at less favorable rates due to the erroneous reporting by Equifax.

58. Defendant's inaccurate reporting of the Account, along with additional information belonging to Plaintiff, was published to multiple creditors including but not limited to Chevrolet,

9

FirstInvst, CPS, Global Lending, HAC Auto, Capital One, American CR, and Western Fun by Defendant during the process of Plaintiff's credit applications.

59. Plaintiff's consumer credit file and consumer reports were also reviewed by numerous other entities after Equifax began reporting the bankruptcy; those entities viewed the erroneous information published by Equifax.

60. As a direct result of Defendant's inaccurate reporting, Plaintiff suffers damages, including a decreased credit score, lower overall creditworthiness, and other financial harm.

61. As a direct result of Defendant's inaccurate reporting, Plaintiff also suffers actual damages in the form of attorneys' fees incurred, related to Defendant's inaccurate reporting.

62. As a direct result of Defendant's inaccurate reporting, Plaintiff also lost a significant amount of time attempting to correct Equifax's inaccurate reporting.

63. Additionally, Plaintiff suffers interference with daily activities, as well as emotional distress, including, without limitation, emotional and mental anguish, disturbance of sleep, reputational damage, humiliation, stress, anger, frustration, shock, invasion of Plaintiff's privacy, embarrassment, and anxiety.

### V. COUNT I
### Violations of the FCRA, 15 U.S.C. § 1681e(b)

64. Plaintiff incorporates herein by reference all the above paragraphs of this Complaint as though fully set forth herein at length.

65. The FCRA requires CRAs, like Defendant, to maintain and follow reasonable procedures to assure maximum possible accuracy of consumer information. 15 U.S.C. § 1681e(b).

66. Defendant negligently and/or willfully violated 15 U.S.C. § 1681e(b) by failing to use reasonable procedures to assure maximum possible accuracy of the information it reported about Plaintiff.

67. Defendant does not use a reasonable number of identifiers in its partial matching procedures to prevent mixed file issues such as the one which occurred here with Plaintiff.

68. Upon information and belief, Defendant received notice of Plaintiff's son's bankruptcy, which identified the consumer included a social security number different than Plaintiff's.

69. Despite knowing not all personal identifying information matched, Defendant inaccurately matched the bankruptcy with Plaintiff based on partial personal identifying information which matched, such as Plaintiff's last name and the initial letter of Plaintiff's first name.

70. Defendant knew or should have known that the bankruptcy it reported on Plaintiff's consumer reports did not belong to Plaintiff.

71. Defendant knew or should have known that, upon information and belief, it was Plaintiff's son, and not Plaintiff, who filed for the bankruptcy Equifax reported on Plaintiff's consumer report.

72. Defendant's unreasonable policies and procedures cause it to routinely report inaccurate and materially misleading information about consumers, including Plaintiff.

73. Defendant's unreasonable policies and procedures cause it to regularly report consumer information without verifying its accuracy.

74. Defendant's unreasonable policies, procedures and/or algorithms consistently fail to properly match the personal identifying information of consumers who filed for bankruptcy with the personal identifying information of a consumer's credit file as required by § 1681(e)(b).

75. Defendant knows the information it report about consumers' bankruptcies is often inconsistent with public records and its own files.

11

76. In this case, Equifax inaccurately reported a bankruptcy on Plaintiff's consumer report when Plaintiff has never filed for Chapter 13 bankruptcy in his life.

77. Defendant's failure to maintain and employ reasonable procedures to assure the maximum accuracy of consumers' bankruptcies is particularly egregious because the Defendant regularly and voluntarily search for consumer bankruptcy information to include in credit files.

78. Defendant knew or should have known it is obligated, by the FCRA, to maintain and employ reasonable procedures to assure it reports maximally accurate consumer credit information.

79. CRAs' obligations are established by the plain language of the FCRA, promulgated by the Federal Trade Commission, supported by well-established case law, and demonstrated in prior cases involving the Defendant.

80. Therefore, Defendant had ample notice of its obligations under the FCRA and its continued use of unreasonable procedures.

81. Despite knowledge of its legal obligations to have procedures in place to report with maximum accuracy, Defendant willfully and knowingly breached its duties in violation of 15 U.S.C. § 1681e(b). Accordingly, Defendants deprived Plaintiff of Plaintiff's rights as a consumer under the FCRA.

82. Defendant violated 15 U.S.C. § 1681e(b) by failing to establish or to follow reasonable procedures to assure maximum possible accuracy in the preparation of the credit reports and credit files it published and maintained concerning Plaintiff.

83. Defendant's violations of 15 U.S.C. § 1681e(b) were willful.

84. Alternatively, Defendant's violations of 15 U.S.C. § 1681e(b) were negligent.

85. Defendant's inaccurate reporting damaged Plaintiff's creditworthiness.

86. Plaintiff suffers actual damages, including a decreased credit score, loss of credit opportunities, credit denials, loss of time, and other financial harm caused by the Defendant inaccurately reporting a bankruptcy on Plaintiff's consumer report when Plaintiff had never filed for bankruptcy in his life.

87. Plaintiff also suffers interference with daily activities caused by other harm including, but not limited to, emotional distress, mental anguish, humiliation, stress, anger, frustration, shock, embarrassment, and anxiety.

88. Defendant is a direct and proximate cause of Plaintiff's damages.

89. Defendant is a substantial factor in Plaintiff's damages.

90. Defendant's acts, as described above, were done willfully and knowingly; or, alternatively were committed negligently.

91. Therefore, Defendant is liable for actual and statutory damages, punitive damages, attorneys' fees, costs, as well as other such relief permitted by 15 U.S.C. § 1681 *et seq*.

## VI. **PRAYER FOR RELIEF**

WHEREFORE, Plaintiff respectfully requests that this Honorable Court enter judgments against Defendant for the following:

(a) Declaratory judgment that Defendant violated the FCRA;

(b) An award of actual damages pursuant to 15 U.S.C. §§ 1681n(a)(1) or 1681o(a)(1);

(c) An award of statutory damages pursuant to 15 U.S.C. §§ 1681n(a)(1) and 1681o(a)(1);

(d) An award of punitive damages, as allowed by the Court pursuant to 15 U.S.C. § 1681n(a)(2),

(e)     Costs and reasonable attorneys' fees pursuant to 15 U.S.C. § 1681n(a)(3) and § 1681o(a)(2); and

(f)     Such other and further relief as this Honorable Court may deem just and proper, including any applicable pre-judgment and post-judgment interest, and/or declaratory relief.

## VII.    JURY DEMAND

Plaintiff hereby demands jury trial on all issues so triable.

RESPECTFULLY SUBMITTED this 14th day of November, 2024

**HASEEB LEGAL LLC**

By: /s/ *Syed H. Hussain*
Syed H. Hussain
420 E. Waterside Dr. #3004
Chicago, IL 60601
Telephone: 954-225-4934
E-mail: sh@haseeblegal.com
*Attorneys for Plaintiff*